**Ex parte Abraham RILEY.**

**No. 09–85–051–CV.**

Court of Appeals of Texas, Beaumont.

April 4, 1985.

Rehearing Denied May 1, 1985.

Rex Woodard, Beaumont, for appellant.

James DeLee, Nederland, for appellee.

OPINION

BURGESS, Justice.

This is a habeas corpus case. Relator alleges he is illegally confined because he does not have the status of a "parent" over the child Keisha Riley and thus an agreed order concerning child support is not enforceable by contempt. In December, 1978, Mrs. Virginia Traylor, the maternal grandmother of Keisha Riley, filed an original petition alleging Abraham Riley, Jr., was the natural father of the child and seeking the managing conservatorship. An agreed decree was entered in June 1981, wherein Mrs. Traylor was appointed the managing conservator, and Abraham Riley, Jr., was appointed the possessory conservator with certain periods of access to the child. In addition, the following language was in the decree:

"IT IS DECREED that ABRAHAM RILEY, JR., shall continue to pay to VICTORIA TRAYLOR child support in the amount of $100.00 per month, with the next payment being due and payable on the 1st day of July, 1981, and a like payment being due and payable on the same day of each month thereafter until the child reaches the age of 18 years or is otherwise emancipated."

On May 10, 1984, Mrs. Traylor filed a petition for notice to show cause for failing to pay the support payments. On June 18, 1984, a hearing was held. Mr. Riley was found to be in contempt and his punishment assessed at six months confinement in the county jail. Imposition of the order of commitment was withheld, however, and he was placed on probation for a period of five years. The conditions of probation included, among other things, that Mr. Riley "pay entire arrearage of $3000.00 on or before September 18, 1984." On October 11, 1984, a motion to revoke Mr. Riley's probation was filed, a warrant for his arrest was issued on October 17th and he was arrested on October 19th. On October 29, 1984, a hearing was held, the court found Mr. Riley had willfully violated his probation and revoked same. A commitment was issued that same day committing Mr. Riley to jail for a period of six months and thereafter until he had paid the $3000.00 arrearage, court costs and attorney's fees.

Application for writ of habeas corpus was filed in this court on February 20, 1985.

Mr. Riley's argument is that he has not been shown to be a "parent" of the minor child; only "parents" may be ordered to support children; and thus the decree of June 1981, imposes only a contractual obligation upon him.

The Texas Family Code (Vernon 1975) provisions concerning a parent are:

*Section 11.01(3):* "Parent" means the mother, a man as to whom the child is legitimate, or an adoptive mother or father, but does not include a parent as to whom the parent-child relationship has been terminated.

*Section 12.02:* (a) A child is the legitimate child of his father if the child is born or conceived before or during the marriage of his father and mother. (b) A child is the legitimate child of his father if at any time his mother and father have attempted to marry in apparent compli-

ance with the laws of this state or another state or nation, although the attempted marriage is or might be declared void, and the child is born or conceived before or during the attempted marriage. (c) A child is the legitimate child of a man if the man's paternity is established under the provisions of Chapter 13 of this code.

Mr. Riley alleges there has never been a judicial finding of any of the factors which would create the parent-child relationship. Specifically, the June 1981 decree makes no finding of paternity or any parent-child relationship. For whatever reasons Mrs. Traylor did not seek or pursue such a finding, we do not know. But, all relief sought and not granted was denied by the trial court.

An analogous case is *Mata v. Moreno*, 601 S.W.2d 58 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). Here the court held that a consent judgment which fails to predicate the payment of child support upon either an express or implied finding that a parent-child relationship exists is not subject to a modification. They further held that the Family Code empowers a court to order an individual to pay child support only if it determines that a parent-child relationship exists. Their reasoning was based on *Section 14.05(a)*, of the Texas Family Code (Vernon Supp.1985), which states:

(a) The court may order either or both parents to make periodic payments or a lump-sum payment, or both, for the support of the child until he is 18 years of age in the manner and to the persons specified by the court in the decree. In addition, the court may order a parent obligated to support a child to set aside property to be administered for the support of the child in the manner and by the persons specified by the court in the decree. In determining the amount of child support, the court shall consider all appropriate factors, including but not limited to the needs of the child, the ability of the parents to contribute to the

child's support, any financial resources available for the support of the child, and any schedules, guidelines, and formulas adopted by the court. The court by local rule may establish and publish schedules, guidelines, and formulas to be used by the court in determining the amount and manner of child support.

 The language of the Family Code is clear and unambiguous. A court may only order parents to make support payments. There may have been ample evidence for the court to make a finding that Mr. Riley was a parent, if so, Mrs. Traylor may be entitled to a bill of review to have the decree reformed, *see Johnson v. Johnson*, 579 S.W.2d 30 (Tex.Civ.App.—Beaumont 1979, no writ). There may have been judicial admissions made by Mr. Riley which would allow a successful paternity action by Mrs. Traylor. This court is bound by the record and instruments before it. The decree of June 1981 makes no finding, either express or implied, that Mr. Riley is a parent of the minor child. It is not enforceable by contempt.

The dissent places great store in the pleading of Mr. Riley.[1] No findings of fact or conclusions of law were filed at the time the June, 1981 decree was entered. There was no statement of facts before this court. The trial court had all the pleadings and evidence before it and still did not make a finding that Abraham Riley was a parent of the child. Yet, the dissent would go behind the decree and make findings based upon the pleadings.

The dissent has found an implied finding that Mr. Riley was a parent "by the style and heading of the original decree." He further finds that the trial judge made an express finding that Mr. Riley was a parent. This express finding is made based upon the language which appoints Mrs. Traylor the managing conservator. Following this skewed logic, these points would necessarily be an implied and express finding that Mrs. Traylor was a parent. Neither conclusion can be drawn.

1. This court granted motion to supplement the record with this pleading on April 2, 1984, 41

days after the writ was filed, 12 days after submission and 2 days prior to this opinion.

We find nothing judicial, good or humorous about the dissent characterizing this opinion and *Ex Parte Seymour*, 688 S.W.2d 139 (Tex.App.—Beaumont, 1985)[2] as "technical reasoning". If refusing to erode the rights guaranteed each and every citizen by the United States and Texas Constitutions is "technical reasoning", then so be it.

The relief is granted and the relator ordered released from confinement.

BROOKSHIRE, Justice, dissenting.

I respectfully dissent. The original pleading on which this case is based alleged that Abraham Riley, Jr., Relator, is the natural father of the said child, Keisha Riley, a female born November 8, 1977. The natural mother of Keisha was Cheryl Traylor. Cheryl Traylor, it was alleged, was deliberately shot and killed by Abraham Riley, Jr., on or about October 30, 1978. The original petition was verified.

The Relator's singular point is that he does not have the status of "parent" in relationship to the child, Keisha, and thus the child support order is not enforceable by contempt and incarceration for contempt. At the very threshold we are met with the basic concept that this is a collateral attack on a judgment of contempt. Relief is available only if the judgment of contempt is void. *See Ex Parte Butler*, 523 S.W.2d 309 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ); *Ex Parte Cox*, 479 S.W.2d 110 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). For the collateral attack to be successful the order must be absolutely void and not merely voidable. *Ex Parte Sturdivant*, 544 S.W.2d 512 (Tex. Civ.App.—Texarkana 1976, no writ); *Ex Parte Filemyr*, 509 S.W.2d 731 (Tex.Civ. App.—Austin 1974, no writ). The fact that a judgment may be erroneous does not render it void. *Ex Parte Lowery*, 518 S.W.2d 897 (Tex.Civ.App.—Beaumont 1975 *Ex Parte Williams*, 469 S.W.2d 449 (Tex. Civ.App.—Beaumont 1971, no writ). It must be void on its face. *Ex Parte Henderson*, 512 S.W.2d 37 (Tex.Civ.App.—El Paso 1974, no writ).

At oral submission Relator, through counsel, conceded that the order of commitment and the judgment of contempt were valid and were not the object of his attack. His frontal attack is solely against the judgment or decree of June 25, 1981, affecting the parent-child relationship. From the record before us, the trial court had jurisdiction of Victoria Traylor, who was the maternal grandmother of Keisha; of Relator, who appeared in person for all purposes and by attorney of record and announced ready for trial; of Keisha, the child, and of the subject matter. The trial court, after making a careful examination of the pleadings and hearing the evidence, found that it had jurisdiction of the cause and of all the parties to it. The court specifically found that Keisha was the subject of the suit. The decree appointed Victoria Traylor managing conservator of the child and also decreed that Abraham Riley, Jr., was appointed possessory conservator of the child and provided that the possessory conservator would have the child two weekends of each month, plus every Christmas and every Father's Day and for a period of two weeks during the summer school vacations. The decree specifically provided that the possessory conservator would have the following rights, privileges, duties and powers during possession:

"[T]he duty of care, control, protection, and reasonable discipline of the child;

"[T]he duty to provide the child with clothing, food, and shelter; and,

"[T]he power to consent to medical and surgical treatment during an emergency involving an immediate danger to the health and safety of the child."

It was then decreed that Relator would pay "child support in the amount of $100.00 per month." Abraham Riley, Jr., approved the decree both as to form and content. After this decree of June, 1981, Riley moved to

---

**2.** A motion to certify questions to the Supreme Court of Texas as a result of the *Seymour* opinion was filed February 2, 1985. On March 20, 1985, the court dismissed the motion, thus refusing to review this court's opinion.

be appointed the actual managing conservator of the child.

It should be borne in mind that the Relator makes no attack and concedes the validity of the Decree of Contempt dated June 18, 1984. The June, 1984, Decree of Contempt finds and recites that Abraham Riley, Jr., stands charged with contempt in failing and refusing to comply with the terms of the support order wherein the court ordered him *to pay child support for the maintenance of his minor child.*

The Decree of Contempt was based on a Motion for Notice to Show Cause, wherein it was recited that the Court had entered an order ordering Riley to pay *support for his child* at the rate of $100.00 per month, being a valid and subsisting order.

The Decree in the Suit Affecting the Parent-Child Relationship—that is what the judge was determining, a parent-child relationship—of June 25, 1981, was not void; it is certainly not void on its face. The Decree of Contempt of June 18, 1984, ordering him to pay child support for his minor child, is not void and certainly not void on its face. The same is true of the order revoking probation and the order of attachment and commitment.

Under this record, habeas corpus, being a collateral attack, will not lie nor prevail. Relator places reliance on *Mata v. Moreno,* 601 S.W.2d 58 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). *Mata, supra,* was a case of an appeal from an order dismissing a motion to increase child support. It was not a habeas corpus proceeding. *Mata, supra,* was a direct attack with a full, evidentiary record. It was not a collateral attack. The background in *Mata, supra,* was that one party had sued the other for a divorce alleging a common-law marriage and that a child was born of that common-law marriage. During the hearing on the merits the parties announced to the trial court that it was agreed that no common-law marriage existed between the parties and, moreover, the alleged father had affirmatively denied that he was the father of the child. He was willing to " 'buy his peace' and pay the sum of $115 per month

in support". Our case is meaningfully and distinguishably different in that Abraham Riley, Jr., has, in the record before us, affirmed that he is the father of Keisha. In fact, he insists that he wants to be the managing conservator. Furthermore, his trial pleadings below state:

"I.

*"The Cross-Petitioner herein is Abraham Riley, who is the natural father of the child made the basis of this suit."* (Emphasis added)

In Paragraph V he pleads:

"The natural mother of Keisha Riley was Cheryl Traylor, now deceased."

This completely demolishes the basis and undergirding foundation of this Court's opinion.

There is no general denial in his pleadings nor does he specifically deny the allegation in Victoria Traylor's pleadings that he "deliberately shot and killed" Cheryl Traylor, the mother. Further, Riley affirmatively requests the trial court to make proper orders for the support of Keisha. I would hold, under this record, that Riley's own pleadings—being his trial pleadings—are an admission that he is the parent of Keisha and are certainly a valid basis for the implied findings by the Court that Riley is the parent of Keisha, as found in the decree of June 25, 1981. From this record, it is glaringly clear and overwhelmingly demonstrated that Abraham Riley, Jr., had taken the position from the very first that he is the parent of Keisha. He raised no issue of paternity at the contempt hearing or at the hearing on the motion to revoke probation. Only after the door of the Jefferson County Jail slammed shut, did he attempt to raise the issue of his status as parent. He has attempted to do so by habeas corpus proceedings—being a collateral attack. He had the burden of showing that the trial court's actions were totally void, not voidable. He has failed to do so. *See and compare Ex Parte Thetford,* 369 S.W.2d 924 (Tex.1963); *Ex Parte Davis,* 161 Tex. 561, 344 S.W.2d 153 (1961).

In this appeal, the trial judge had the pleadings of the parties before him and made an implied finding that a parent-child relationship existed between Abraham Riley, Jr., and Keisha Riley by the style and heading of the original decree. *TEX. Family Code sec. 11.01(4)* (Vernon 1975) in part, reads:

" 'Parent-child relationship' means the rights, privileges, duties and powers existing between a parent and child as provided by Section 12.04 of this code."

*TEX. Family Code sec. 11.01(5)* (Vernon 1975) reads:

" 'Suit affecting the parent-child relationship' means a suit brought under this subtitle in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is sought."

*TEX. Family Code sec. 12.04* (Vernon Pamph.Supp. 1985) provides, in part:

"Except as otherwise provided by judicial order or by an affidavit of relinquishment of parental rights executed under Section 15.03 of this code, the parent of a child has the following rights, privileges, duties and powers:

"(1) the right to have physical possession of the child and to establish its legal domicile;

"(2) the duty of care, control, protection, moral and religious training, and reasonable discipline of the child;

"(3) the duty to support the child, including providing the child with clothing, food, shelter, medical care, and education;

. . . .

"(10) any other right, privilege, duty, or power existing between a parent and child by virtue of law."

The nature of the original proceedings and the pleadings of the parties and the decree affecting the parent-child relationship compel me to the conclusion that the trial judge, when viewing the instruments from the four corners, made an express and, certainly, an implied finding that Abraham Riley, Jr., was the parent of Keisha Riley. From the inception of this proceeding, on December 12, 1978, up until the filing of the Application for Writ of Habeas Corpus on February 20, 1985, the consistent posture of Abraham Riley, Jr., has been that he is the parent of Keisha.

At the time the original petition was filed by Victoria Traylor, who was the maternal grandmother, the natural mother of Keisha, Cheryl Traylor, was deceased. Hence, Victoria could not have been a parent, but it was a suit affecting a parent-child relationship. Thus there was an implied finding that the suit affecting the parent-child relationship was a suit affecting the relationship between Abraham Riley, Jr., as the natural father and parent, and the child, Keisha. Further, it is interesting and important to note that the trial court, in the decree of June 25, 1981, carefully provided that the managing conservator, Victoria, "shall have all the rights, privileges, duties, and powers of a parent, *to the exclusion of the other parent*, subject to the rights, privileges, duties, and powers granted to any possessory conservator named in this decree." (Emphasis added) The other parent was Riley, this being an express finding by the court.

Since Cheryl was long since deceased and since Victoria was the maternal grandmother, in order to protect her rights, the Court made Victoria's rights superior to the other parent who had to be Abraham Riley, Jr., who paid a large number of child support payments.

I definitely find an express, as well as an implied, finding in that decree that Abraham Riley, Jr., is the parent of Keisha Riley, a female, born November 8, 1977.

Recently, there has been a good deal of publicity on an organization with the acronym "M.A.D.D." (Mothers Against Drunk Drivers). Said in all judicial good humor, if the Court consistently follows the technical reasoning involved in *Ex Parte Forrest E. Seymour*, 688 S.W.2d 139 (Tex.App.—Beaumont 1985) No. 09–84–383 CV, January 31, 1985, and *Ex Parte Abraham Riley, Jr.*, there may yet arise another orga-

nization with the same acronym "M.A.D. D." but standing for "Mothers Against Delinquent Dads".

I would dismiss the Application for Writ of Habeas Corpus.